RECEIVED IN PRO SE OFFICE

NOV 2 9 2021

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ NOV 2 9 2021 ★

BROOKLYN OFFICE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,       )    Case No. CR-90-1063 ᴊ
             Plaintiff,   )
   -VS-               )
                     )
   PAUL MOORE,          )    Motion for Compassionate
           Defendant.   )    Release

     Now comes Paul Moore (hereinafter "Defendant"), acting in <u>pro per</u>, and hereby moves

for compassionate release in the above entitled case.

     A brief in support of said motion is attached hereto and incorporated herein by reference.

                           Respectfully submitted,

                           *Paul Moore*

                           Paul Moore
                           Reg. No. 30156-053
                           Defendant in <u>pro per</u>
                           USP Allenwood
                           P.O. Box 3000
                           White Deer, PA  17887



1

<u>BRIEF</u>

On January 14, 1992, a judgment and commitment order was entered by the Honorable

Renna Raggi after a jury trial convicting Defendant on numerous counts regarding a RICO and

narcotics conspiracy.  Defendant was also convicted of a murder under Texas law and money

laundering.

Defendant is now requesting compassionate release based on a number of reasons.


<u>First Step Act</u>

In the First Step Act, Congress amended 3582 (c)(1)(A) to allow a prisoner to file a

motion for compassionate release on his own behalf.  Before the First Step Act, a motion for

compassionate release could be brought only by the Director of the Bureau of Prisons (the

"BOP").  <u>United States v. York</u>, 2019 WL 3241166 at 4 (E.D. Tenn. July 18, 2019) (citing 18

USC section 3582 (c)(1)(A) (2017)).  The First Step Act modified section 3582 (c)(1)(A) with

the intent of "increasing the use and transparency of compassionate release." Pub. L. No. 115-

391, 132 stat. 5195, 5239 (capitalization omitted); <u>see United States v. Ebbers</u>, 2020 WL 91399

at 7 (citing S. Rep. 98-225 at 121 (1983) (S.D.N.Y. Jan. 8, 2020.

Section 3582 (c)(1)(A) now provides that:

[T]he court, upon motion of the Director of the Bureau of Prisons, or the

defendant after the defendant has fully exhausted all administrative rights to

appeal a failure of the Bureau of Prisons to bring a motion on the defendant's

behalf of, or the lapse of 30 days from the receipt of such a request by the warden

of the defendant's facility, whichever is earlier, may reduce the term of

imprisonment . . . after considering the factors set forth in section 3553 (a) to the

extent that they are applicable, if it finds that — (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the sentencing commission. . .

Congress directed the United States Sentencing Commission, "in promulgating general policy statements regarding the sentencing modification provisions in section 3582 (c)(1)(A) of title 18, [to] describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. section 994 (+); see also 28 U.S.C. 894 (a) (2) (c). In the United States Sentencing Commission Guidelines Manual (the "U.S.S.G."), the sentencing commission has published a policy statement addressing the standards for compassionate release. See U.S.S.G. section 1B1, (the "Policy Statement"), 1B1.13. That policy statement reiterates that a court may reduce a term of imprisonment under section 3582 (c)(1)(A) if "extraordinary and compelling reasons warrant the reduction" and "after considering the factors set forth in the 18 U.S.C. section 3553 (a), to the extent that they are applicable." Id. The policy statement also directs courts to determine that "the defendant is not a danger to the safety of any other person or to the community," before reducing a term of imprisonment under section 3582 (c)(1)(A). Id.

Section 3582 (c)(1)(A) also requires a defendant to exhaust his administrative remedies with the BOP before seeking judicial relief. United States v. Alam, 2020 WL 2845694, at 2 (6th cir. June 2, 2020). A defendant may exhaust his administrative remedies in one of two ways: (1) by exhausting his "administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf," or (2) on "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. section 3582 (c)(1)(A).

3

In the present case, Defendant has exhausted his administrative remedies.  On June 28, 2021, Defendant made a request to the warden for compassionate release.  (Exhibit A).  On July 1, 2021, the warden denied Defendant's request. (Exhibit B).  Thus this court has jurisdiction to rule on Defendant's request.

<u>Elderly Prisoner with Medical Concerns</u>

Defendant is an elderly prisoner with medical concerns and is more susceptible to Covid-19.  Defendant is 56 years old with high blood pressure.  The Center for Disease Control (CDC) has compiled a list of medical conditions that place a person at high risk of severe illness if they contract Covid-19 and a person's age and high blood pressure are among these conditions.  (see https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html).  There is presently a severe outbreak of Covid 19 within the Federal Bureau of Prisons and hundreds of prisoners have died from this disease.  Now the new delta variant of Covid-19 is arriving in the BOP and starting to spread fast.  It is much more difficult to protect yourself from Covid-19 in the prison system.  Several federal courts have granted compassionate release to inmates who suffer from any of the conditions listed by the CDC including a person's age, high blood pressure, and other medical conditions.  See e.g., United States v. Howard, 2020 WL 2200855, at 3 (E.D.N.Y. May 6, 2020) (defendant was 52 years old and suffering from COPD and obesity, and other issues).

Since the beginning of the pandemic Defendant has developed tremendous anxiety and depression over the fear of contracting Covid-19.  Given his age and his medical conditions he is gravely afraid of what might happen to him if he contracts Covid-19.  He is greatly concerned about the institution's ability to keep him separated from others, but further that if he does get

4

sick, that the institution lacks the ability to properly meet his medical needs. He therefore

requests this court to order him released. Given these circumstances, Defendant requests this

Court to grant him a compassionate release as permitted by 18 USC section 3582 (c)(1)(A).


### Extraordinary Long Sentence

Defendant has been incarcerated for approximately 32 years. According to the Overview

of Federal Criminal Cases published by the United States sentencing Commission for the fiscal

year of 2019, the average sentence imposed for murder is 255 months, about 11 years less than

Defendant has already served.  U.S. sentencing comm, Overview of Federal Criminal Cases,

Fiscal Year 2019, at 9 (2020). Also see United States v. Rios, 2020 U.S. Dist. LEXIS 230078

(D. Conn. Dec. 8, 2020).

The Fourth Circuit recently instructed that "courts are 'empowered . . . to consider any

extraordinary and compelling reason for release that a defendant might raise.'" United States v.

McCoy, 981 F. 3d 272, 284 (4th Cir. 2020). The McCoy court stated that district courts have

discretion to deem sentencing disparities, such as those presented here, as extraordinary and

compelling justifications for relief. United States v. Ramos, 2021 U.S. Dist. LEXIS 41776 (D. of

Md. March 4, 2021). Numerous District Courts have reduced these extraordinary long sentences

under the new compassionate release statute untitled First Step Act. See United States v. Torres,

2020 U.S. Dist. LEXIS 95393 (S.D.N.Y. June 1, 2020) (life sentences reduced to time served);

United States v. Mondera, 2020 U.S. Dist. LEXIS 37483 (S.D. Cal. March 3, 2020) (mandatory

life without parole reduced to time served); United States v. Perez, 2021 U.S. Dist. LEXIS 41040

(Dist. Of Conn. March 4, 2021) (Defendant convicted of murder-for-hire and sentenced to

mandatory life reduced to time served); United States v. Gluzman, 2020 U.S. Dist. LEXIS

131749 (S.D.N.Y. July 23, 2020) (granting compassionate release to defendant convicted of the premeditated murder of spouse and sentenced to life); United States v. Tidwell, 476 F. Supp. 3d 66 (E.D. Pa. 2020) (granting compassionate release to defendant sentenced to life for murder in furtherance of a continuing criminal enterprise); United States v. Rodriguez, 2020 U.S. Dist. LEXIS 181004 (S.D.N.Y. Sept. 30, 2020) (granting compassionate release to defendant convicted of the brutal murder of a government informant and sentenced to life); United States v. Rios, 2020 U.S. Dist. LEXIS 230074 (D. Conn. Dec. 8, 2020) (granting compassionate release to defendant convicted of VICAR murder and sentenced to life).

Accordingly, Defendant has also demonstrated extraordinary and compelling circumstances for relief under section 3582 (c)(1)(A) based on sentencing disparities.

Section 404 of the First Step Act

Enacted in 2018 "section 404 of the First Step Act authorizes retroactive application of sections 2 and 3 of the Fair Sentencing Act to defendants who were sentenced for crack cocaine offenses committed prior to August 3, 2010." The Fair Sentencing Act in 2010 "'reduced [future] statutory penalties for cocaine base [ ] offenses' in order to 'alleviate the severe sentencing disparity between crack and powder cocaine.'" United States v. Medina, 2019 WL 3769598, *3 (D. Conn. July 17, 2019).

"Specifically, section 404 of the First Step Act permits 'a court that imposed a sentence for a covered offense' to 'impose' a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed.'" United States v. Williams, 2019 WL 2865226 at *2 (S.D.N.Y. July 3, 2019) (quoting First Step Act section 404).

6

The threshold issue for this Court is defendant's eligibility for relief, which requires the Court to determine first whether he was convicted of a "covered offense" under section 404 of the First Step Act.  If Defendant is eligible for relief, the Court then must determine whether its discretion should be exercised to reduce his current sentence and, if so, by how much.  Section 404 (a) of the First Step Act defines a "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair sentencing Act of 2010 that was committed before August 3, 2010."  First Step Act section 404 (a).

This language does not, on its face, restrict eligibility to defendants who were only convicted of a singular violation of a federal criminal statute whose penalties were modified by section 2 or section 3 of the Fair Sentencing Act.  So long as a defendant was convicted of "a violation" — i.e., at least one violation – for which the penalties were modified by section 2 or 3 of the Fair Sentencing Act, he or she is eligible for relief under the First Step Act.  And various courts agree that the First Step Act should be construed broadly.  See, e.g. United States v. Rose, 379 F. Supp. 3d 223, 229 (S.D.N.Y. May 24, 2019).  ("Both the Fair Sentencing Act and the First Step Act have the remedial purpose of mitigating the unfairness created by the crack-to-powder cocaine ratio."); see also United States v. Allen, 2019 WL 1877072 (D. Conn. Apr. 26. 2019).  Additionally, as a multitude of district courts across the country have now recognized, "[i]t is the statute of conviction, rather than a defendant's actual conduct, that determines a defendant's eligibility under the First Step Act." Williams, 2019 WL 2865226, at *2 (S.D.N.Y. July 3, 2019) (citing Rose, 379 F. Supp. 3d at 228-31); United States v. White, 2019 WL 3228335, at *2 n.l. (S.D. Tex. July 17, 2019) (collecting forty-one district court cases reaching this conclusion); see also United States v. Boulding, 379 F. Supp. 3d 646, 651 (W.D. Mich. May 16, 2019) ("[e]ligibility under the language of the First Step Act turns on a simple, categorical

question: namely, whether a defendant's offense of conviction was a crack cocaine offense affected by the Fair sentencing Act. If so, the defendant is categorically eligible for consideration regardless of actual quantities. The particular quantities affect only the court's discretionary call on whether to grant a reduction in sentence . . . . For purposes of eligibility alone, quantity determinations are unnecessary. The statute rests eligibility on the nature of a defendant's prior conviction: specifically, whether it was a "covered offense.'").

Eligibility for relief under the First Step Act thus turns not on whether a conviction, even if it incorporates several violations of criminal statutes, may be constructed as a whole as a "covered offense," but whether there is a conviction of a violation of a criminal statute for which the statutory penalties were modified by section 2 or 3 of the Fair sentencing Act. Importantly, [t]he Fair Sentencing Act modified the penalties for a crime involving 50 grams or more of crack cocaine and therefore, that crime is a 'covered offense' for purposes of the First Step act." Medina, 2019 WL 3769598, at *2 (quoting First Step Act section 404 (a)).

In United States v. Powell, 2019 U.S. Dist. LEXIS 171895 (D. Conn. Oct. 3, 2019), the government argued that Powell was ineligible for relief under the First Step Act for two reasons.

First, the government argued that Powell was ineligible because he was also convicted of a RICO conspiracy that involved several murders and the statutory penalties for that crime was not changed by sections 2 and 3 of the First Step Act.

Second, the government argued that the focus should be on Powell's actual conduct or violation, instead of the statute cited in the charging document. Id.

The court disagreed with the government's arguments. First the Court ruled that the RICO conspiracy murder charge is governed by state law and in Connecticut a murder conspiracy carries a maximum of twenty years, not life. Thus, the murder conspiracy does not

expose Powell to a statutory maximum of life on his RICO convictions but instead to a prison

term of no more than twenty years.  Therefore, the murder predicate act did not drive the RICO

statutory maximum penalty because they are "covered offenses" under the First Step Act.

As to the government's second argument, the Court ruled that many district courts

already have rejected it. See e.g., Boulding, 379 F. Supp 3d at 651. And, although the

government urged the court to consider the monthly nine-kilogram quantity attributed to Powell

in the Presentence Report, the Court ruled that at sentencing the judge did not adopt any specific

quantity findings from the Presentence Report, nor did he attribute any quantity of crack cocaine

to Powell. Thus, there was no quantity finding of crack cocaine applicable to Powell and since he

was convicted of a "covered offense" Powell was eligible for relief under the First Step Act.

The instant case is very similar to the Powell case.  There was no adoption of any specific

quantity findings from the Presentence Report, and this court did not attribute any quantity of

crack cocaine to Defendant at sentencing.  Moreover, since the indictment did not charge

Defendant with any specific quantity of cocaine, he must be sentenced under 21 USC section 841

(b) (1) (c) which carries a maximum sentence of 20 years pursuant to the principles of Apprendi

v. New Jersey, 530 U.S. 466 (2000).

Furthermore, Defendant's Racketeering murder conviction is governed by state law.  In

Texas a defendant convicted of First Degree murder does not face a mandatory life sentence

without parole.  He faces a sentence between 5 and 99 years.  See Texas penal law 19.02 and

7.02.  Additionally, at the punishment stage of a trial in Texas for this offense, the defendant may

raise the issue as to whether he caused the death under the immediate influence of sudden

passion arising from an adequate cause.  If the defendant proves the issue in the affirmative by a

preponderance of the evidence, the offense is a felony of the second degree.  A felony of the

second degree carries a sentence of 2 to 20 years. Defendant did not have the opportunity at his trial to raise the issue as to whether he caused the death under the immediate influence of sudden passion arising from an adequate cause. Therefore, pursuant to the principles of <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), he should by resentenced to a sentence of 2 to 20 years. <u>See Powell</u>, 2019 U.S. Dist. LEXIS 171895 (D. Conn. Oct. 3, 2019). Thus, this court has discretion to sentence Defendant to any number of years and the murder conviction does not drive the racketeering statutory maximum penalty because it is a "covered offense" under the First Step Act. <u>Powell</u>, 2019 U.S. Dist. LEXIS at 171895.

Accordingly, having been convicted of a "covered offense," Defendant is eligible for relief under section 404 of the First Step Act. Defendant has also demonstrated extraordinary and compelling circumstances for relief under section 3582 (c)(1)(A) based on sentencing disparities regarding this argument. <u>See United States v. McCoy</u>, 981 F. 3d 271, 284 (4th Cir. 2020) (courts are empowered to consider any extraordinary and compelling reason for release that a defendant might raise, including sentencing disparities).


<u>Extraordinary Rehabilitation</u>

Defendant has been completely rehabilitated. Although the compassionate release statute provides that "[r]ehabilitation of the defendant <u>alone</u> shall not be considered an extraordinary and compelling reason." 28 USC section 994 (t) (emphasis added). But as the second circuit recognized in a recent decision, while rehabilitation "alone" is insufficient, it can "interact with the present coronavirus pandemic" to create an extraordinary and compelling reason for a sentence reduction. <u>United States v. Brooker</u>, 976 F. 3d 228, 2020 U.S. App. LEXIS 30605, 2020 WL 5739712, at *9 (2d cir. Sept. 25, 2020). <u>See also United States v. Millan</u>, 2020 U.S.

Dist. Lexis 59955, 2020 WL 1674058, at *7 (S.D.N.Y. Apr. 6, 2020) ("[Congress]" use of the modifier 'alone' evidenced that [it] believed that rehabilitation is relevant to the question of whether a sentence should be reduced and that rehabilitation, when considered together with other equitable factors, could constitute extraordinary and compelling reasons for a sentencing reduction.").

Here, the evidence of Defendant's rehabilitation cannot be disputed. Defendant has taken over 42 education courses. (Exhibit C). He also has a remarkable work record. He has not received any infractions over his 32 years of incarceration. The BOP has scored his recidivism risk level as minimum. (Exhibit D). In his 32 years of imprisonment, he has matured from a rash young man pursuing a lawless lifestyle, to a reflective, empathetic middle-aged adult. And he has done all this while realizing that he is serving a life sentence with no possibility of parole.

All of the above overwhelming evidence of rehabilitation weighs in favor of a finding that extraordinary and compelling reasons exist to modify Defendant's sentence. That Defendant has developed such an outstanding record in prison "without any tangible incentive other than self-improvement, given that his life sentence meant that he could neither earn any 'good time' credit nor receive any other sentence benefit" weighs all the more strongly still. Millan, 2020 U.S. Dist. LEXIS 59955, 2020 WL 1674058, at *7.


Section 3553 (a) Factors

Although Defendant believes that he has established extraordinary and compelling reasons for compassionate release, section 3582 (c)(1)(A) requires the Court to also consider factors set forth in 18 USC section 3553 (a), including "the nature and circumstances of the offense and the history and characteristics of the defendant," the need for the   sentence imposed

11

"to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," the need for the sentence "to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant," and the need "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 USC section 3553 (a) (1), (2).

As to the "history and characteristics" of Defendant, in making this analysis, this Court can be guided by the Supreme Court's observation that "evidence of post-sentencing rehabilitation may plainly be relevant to 'the history and characteristics of the defendant." Pepper v. United States, 562 U.S. 476, 491, 131 S. Ct. 1229, 179 L. Ed. 2d 196 (2011). As detailed above, Defendant has undertaken extraordinary efforts at rehabilitation since his incarceration. His remarkable post-sentencing record weighs strongly in favor of a sentencing reduction since his incarceration. His remarkable post-sentencing record weighs strongly in favor of a sentencing reduction.

Regarding "the need to protect the public from further crimes," it is well established that there is zero chance that Defendant will reoffend. Defendant's outstanding long-term prison record, lack of any significant disciplinary history, and the BOP's determination that Defendant's recidivism risk level is minimum, points to a changed man. (See exhibit D). After all, the BOP is in the best position to make this determination. Thus, there is very little evidence to suggest that Defendant would go out and commit new crimes.

Section 3553 (a) also requires that a sentence "reflect the seriousness of the offense," "promote respect for the law," and "provide just punishment for the offense." Defendant was sentenced to mandatory life without parole. Although he was sentenced to life under Federal law based on a state crime, the sentence was not mandatory under Texas law. Under state law in

12

Texas, he faced 5 to 99 years. See argument supra. Moreover, the mandatory component does not bar relief under the First Step Act. United States v. Dusenbery, WL 6694408 (N.D. Oh., Nov. 13, 2020) (mandatory life sentence granted compassionate release); United States v. Gluzman, 2020 U.S. Dist. LEXIS 131749 (S.D.N.Y. July 23, 2020). (granting compassionate release to defendant convicted of the premeditated murder of her spouse and sentenced to life); United States v. Tidwell, 476 F. Supp. 3d 66 (E.D. Pa. 2020) (granting compassionate release to defendant sentenced to life for murder in furtherance of a continuing criminal enterprise); United States v. Rodriguez, 2020 U.S. Dist. LEXIS 181004, 492 F. Supp. 3d 306 (S.D.N.Y Sept. 30, 2020) (granting compassionate release to defendant convicted of murdering a government informant and sentenced to life); United States v. Rios, 2020 U.S. Dist. LEXIS 230074 (D. Conn. Dec. 8, 2020) (granting compassionate release to defendant convicted of VICAR murder and sentenced to life). Although the seriousness of a defendant's offense must be considered when determining whether a reduction is appropriate, it should be weighed alongside the other section 3553(a) factors, particularly effective deterrence and public protection, and any other considerations the court deems important.

Defendant has served approximately 32 years of incarceration for this offense when the average sentence imposed for murder is 255 months. See U.S. Sentencing Comm., Overview of Federal Criminal Cases, Fiscal Year 2019, at 9 (2020). Also see United States v. Rios, 2020 U.S. Dist. LEXIS 230074 (D. Conn. Dec. 8, 2020). Moreover, under Texas law the court retains the authority to sentenced Defendant to any sentence between 5 and 99 years. See Texas Penal Law sections 19.02 and 7.02. Further, the pandemic, aside from posing a threat to Defendant's health, has made Defendant's incarceration harsher and more punitive than would otherwise have been the case. This is because the federal prisons, as "prime candidates" for the spread of the virus,

see United States v. Al Kasser, 480 F. Supp 3d 582 (S.D.N.Y. Aug. 19, 2020), have had to impose onerous lockdowns and restrictions that have made the incarceration of prisoners far more harsher than normal.  For someone with Defendant's health profile, the risk of suffering severe health consequences if he contracts Covid-19, coupled to the severe conditions imposed by the concomitant lockdowns and restrictions that are necessary to ensure Defendant's safety, means that "the actual severity of [Defendant's] sentence as a result of the Covid-19 outbreak exceeds what the court anticipated at the time of sentencing." United States v. Mel, 2020 U.S. Dist. LEXIS 74491, 2020 WL 2041674, at *3 (D. Md. Apr. 28, 2020).

Based on all of the above, releasing Defendant after over 32 years of incarceration will "reflect the seriousness of the offense," "promote respect for the law," and "provide just punishment for the offense."

Finally, in assessing whether release is appropriate, this Court also considers whether a reduction "in a defendant's sentence would lead to substantial sentencing disparities with other criminal defendants convicted of similar conduct.  Being that Defendant has served over 32 years of incarceration for this offense when the average sentence imposed for murder is 255 months, this case does not create impermissible sentencing disparities.

After consideration of the 3553 (a) factors, this Court should conclude that continued incarceration of defendant, exposing him to potentially severe consequences of coronavirus infection is too harsh a sentence and in light of his extraordinary and compelling circumstances regarding his other issues and prison record, his motion for compassionate release should be granted.

14

CONCLUSION

Based on the above, Defendant requests the Court to grant his compassionate release motion and reduce his sentence to time served.  Defendant also requests this Court to appoint counsel to help him litigate this case.

Respectfully submitted,

*Paul Moore*

Paul Moore
Reg. No. 30156-053
Defendant in pro per
USP Allenwood
P.O. Box 3000
White Deer, PA  17887

CERTIFICATE OF SERVICE

It is hereby certified that a copy of the foregoing this _24th_ day of _November_, 2021, was served upon the following:

Office of the U.S. Attorney
271 Cadman Plaza East
Brooklyn, NY 11201

*Paul Moore*

Paul Moore

**TRULINCS  30156053 - MOORE, PAUL - Unit: ALP-C-A**

--------------------------------------------------------------------------------

FROM: 30156053
TO: USP Warden
SUBJECT: ***Request to Staff*** MOORE, PAUL, Reg# 30156053, ALP-C-A
DATE: 06/29/2021 03:58:03 PM

To: Warden Quay
Inmate Work Assignment: unit orderly

Warden Quay, I am currently an inmate at USP Allwnood. I ma hereby respectfully requesting that I be considered for compassionate release from my "Life" sentence pursuant to 18 U.S.C. Section 3582(c)(1)(a). I believe that my situation presents extraordinary and compelling reasons to warrant reduction of my sentence.

The crimes that I'm convicted of DRUG CONPSIRACY and RICO Murder which is mandatory life sentence. Notably statistic released by the U.S. Sentencing Commission for 2020 reflect that National Average for that crime, Murder, was 188 months See hppt://ida.usscgov/aanalytic/saw.d11?dashboard.

I am extremely remorseful for my involvement in my crimes. This year I will have served 31 years in the Federal Bureau of Prisons. during my time of incarceration I have continued to better myself by rehabilitating myself by programing. Over the years I missed many milestones in my family and lobed ones lives. Trough these times they have been supportive. My faith is for me to be re-united with my six children and grandchildren to continue to be a positive impact on their lives beyond these walls. If I am released, my recidivism rate is very low.

During the COVID-19 pandemic, I have been subjected to high risk being a care level with high blood pressure at the age o 56 years old.

I have a reentry plan to live with my family.

I would like to thank you for your time and patience in this matter.

Exhibit A

MOORE, Paul
Register No.: 30156-053      128
Unit 3A
Page 1

## Inmate Request to Staff Response

This is in response to your Request to Staff, wherein you request
a Compassionate Release/Reduction in Sentence (RIS) based upon
"extraordinary and compelling circumstances." Specifically, you
state you are 56 years old and are serving a significantly longer
sentence than the national average for the crime which you are
convicted. Additionally, you claim to have rehabilitated yourself
through programming. Lastly, you state your medical condition
warrant consideration based on the COVID-19 pandemic.

In accordance with Program Statement 5050.50, Compassionate
Release/Reduction in Sentence: "New Law" Elderly Inmates must be 70
years or older and have served 30 years or more of their term of
imprisonment. At this time, you are only 54 years old and do not
fit the criteria set forth in policy.

In regards to your request for compassionate release based on your
medical condition, your request does not meet the criteria set forth
in Program Statement 5050.50, Compassionate Release/Reduction in
Sentence. A medical review determined you have not been diagnosed
with a terminal, incurable disease with a life expectancy of eighteen
months or less, you are able to care for your daily needs, and you
are not confined to a bed or wheelchair for greater than fifty percent
of your waking hours.

While I appreciate and understand the issues at hand in regards to
your claim of being sentenced outside of the national average for
your crime and having rehabilitated yourself, your request does not
meet the requirements as set forth in policy. In accordance with
Program Statement 5050.50, Compassionate Release/Reduction in
Sentence, you do not meet the requisite criteria under extraordinary
or compelling circumstances. The Bureau of Prisons does not have
the authority, through its compassionate release/reduction in
sentence procedures, to reduce an inmate's term of imprisonment as
a result of your perception of an unequal sentence or that your
imprisonment has achieved its aims due to you being rehabilitated
through programming.

The BOP is taking extraordinary measures to contain the spread of
COVID-19 and treat any affected inmates. We recognize that you, like
all of us, have legitimate concerns and fears about the spread and
effects of the virus. However, your concern about being potentially
exposed to, or possibly contracting, COVID-19 does not currently
warrant an early release from your sentence.

Exhibit B

Accordingly, your request for Compassionate Release/Reduction in Sentence has been denied.  If you are dissatisfied with this response, you may appeal this decision through the Administrative Remedy Process.


7-1-21
—————————
Date

H. Quay
Warden



**Individualized Needs Plan - Program Review   (Inmate Copy)**
Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: MOORE, PAUL  30156-053

SEQUENCE: 00420134
Team Date: 07-22-2021

| | |
|---|---|
| Facility: | ALP  ALLENWOOD USP |
| Name: | MOORE, PAUL |
| Register No.: | 30156-053 |
| Age: | 54 |
| Date of Birth: | 08-04-1966 |

Proj. Rel. Date: UNKNOWN
Proj. Rel. Mthd: LIFE
DNA Status: ALP01132 / 06-07-2011

**Detainers**

| Detaining Agency | Remarks |
|---|---|
| ICE | DEPORTATION INVESTIGATION-JAMAICA-A#091146394 |

**Pending Charges**

| |
|---|
| ICE Detainer |

**Current Work Assignments**

| Facl | Assignment | Description | Start |
|---|---|---|---|
| ALP | U ORD IIIA | UNIT ORDERLY | 08-05-2020 |

**Current Education Information**

| Facl | Assignment | Description | Start |
|---|---|---|---|
| ALP | ESL HAS | ENGLISH PROFICIENT | 04-14-1992 |
| ALP | GED UNSAT | GED PROGRESS UNSATISFACTORY | 12-30-2014 |
| ALP | GED XN | EXEMPT GED NON-PROMOTABLE | 03-16-1994 |

**Education Courses**

| SubFacl | Action | Description | Start | Stop |
|---|---|---|---|---|
| ALP | | NERVOUS SYSTEM | 06-28-2021 | CURRENT |
| ALP | C | NUTRITION AND BODY COMP | 05-01-2021 | 05-30-2021 |
| ALP | C | ACE EARTH SCIENCE FOR RHU'S | 03-29-2021 | 04-30-2021 |
| ALP | C | RHU OUR SOLAR SYSTEM | 03-29-2021 | 04-30-2021 |
| ALP | C | RHU MANY FACES OF AMERICAN REV | 03-29-2021 | 04-30-2021 |
| ALP | C | RHU EXPLORING EUROPE | 03-29-2021 | 04-30-2021 |
| ALP | C | RHU ACE US CONSTITUTION | 02-22-2021 | 03-31-2021 |
| ALP | C | MUSCULAR FLEXIBILITY & COMPRE | 04-12-2021 | 04-26-2021 |
| ALP | C | THE CARDIOVSCULAR AND THE LYMP | 03-16-2021 | 03-30-2021 |
| ALP | C | RHU ENHANCING YOUR | 02-22-2021 | 02-26-2021 |
| ALP | C | RHU EARLY NORTH AMERICA | 02-16-2021 | 02-26-2021 |
| ALP | C | RHU HISPANIC AMERICANS | 02-16-2021 | 02-26-2021 |
| ALP | C | RHU FAMOUS MALE SPORTS STARS | 02-08-2021 | 02-26-2021 |
| ALP | C | RHU EXPLORING GEOMETRY | 02-08-2021 | 02-26-2021 |
| ALP | C | RHU EARLY CIVILIZATIONS | 01-25-2021 | 02-26-2021 |
| ALP | C | RHU ACE GENDER EQUALITY | 11-02-2020 | 01-29-2021 |
| ALP | C | RHU ANIMAL ANATOMY 14:URINARY | 12-22-2020 | 01-29-2021 |
| ALP | C | RHU ANIMAL ANATOMY 13:DIGESTN | 12-22-2020 | 01-29-2021 |
| ALP | C | RHU ANIMAL ANATOMY 12:LYMPHATI | 12-22-2020 | 01-29-2021 |
| ALP | C | RHU ANIMAL ANATOMY 11:RESPIRAT | 12-22-2020 | 01-29-2021 |
| ALP | C | RHU AMERICAN-INDIAN WARS | 01-07-2021 | 01-29-2021 |
| ALP | C | RHU AFRICAN AMERICAN HISTORY | 01-07-2021 | 01-29-2021 |
| ALP | C | RHU ACE CLIMATE CHANGE COURSE | 10-07-2020 | 10-30-2020 |
| ALP | C | RHU ACE MIND STRENGTH | 09-30-2020 | 10-30-2020 |
| ALP | C | RHU ACE HISTORY MANIFEST DEST | 09-17-2020 | 10-30-2020 |
| ALP | C | RHU ASVAB CAREER EXPLORATION | 07-27-2020 | 10-30-2020 |
| ALP | C | RHU EMAIL BASICS | 07-13-2020 | 10-30-2020 |
| ALP | C | RHU ACE GUIDE TO ONLINE SAFETY | 06-29-2020 | 10-30-2020 |
| ALP | C | RHU START A SMALL BUSINESS | 05-28-2020 | 10-30-2020 |
| ALP | C | SKELETAL SYSTEM | 08-03-2020 | 08-16-2020 |
| ALP | C | STRESS MANAGEMENT | 06-07-2020 | 06-28-2020 |
| ALP | C | SELF STUDY COURSE | 04-22-2020 | 05-20-2020 |
| ALP | C | REC PHYSIOLOGY & FITNESS | 01-02-2017 | 03-26-2017 |


Exhibit C



| **Individualized Needs Plan - Program Review   (Inmate Copy)** | **SEQUENCE: 00420134** |
| --- | --- |

Dept. of Justice / Federal Bureau of Prisons

Plan is for inmate: MOORE, PAUL   30156-053

Team Date: 07-22-2021

| SubFacl | Action | Description | Start | Stop |
| --- | --- | --- | --- | --- |
| ALP | C | REC MEDICAL MYTHS & LIES | 01-02-2017 | 03-20-2017 |
| ALP | C | REC OPTIMIZING BRAIN FITNESS | 10-01-2015 | 12-24-2015 |
| ALP | C | THE CONDEMNED | 06-15-2012 | 06-28-2012 |
| ALP | C | BOOKCLUB PATRIOTS | 10-04-2012 | 10-25-2012 |
| ALP | C | FOUNDERS | 09-05-2012 | 09-25-2012 |
| ALP | C | WORLD WAR Z | 09-01-2012 | 09-22-2012 |
| ALP | C | BOOKCLUB MARCH OF THE DEAD | 07-01-2012 | 07-22-2012 |
| LOM | W | GED PM 13:00-15:00 DISHINGTON | 04-29-1992 | 03-08-1994 |
| LOM | C | GED LESS THAN 8 | 04-29-1992 | 06-12-1992 |

### Discipline History (Last 6 months)

| Hearing Date | Prohibited Acts |
| --- | --- |

** NO INCIDENT REPORTS FOUND IN LAST 6 MONTHS **

### Current Care Assignments

| Assignment | Description | Start |
| --- | --- | --- |
| CARE1 | HEALTHY OR SIMPLE CHRONIC CARE | 02-02-2005 |
| CARE1-MH | CARE1-MENTAL HEALTH | 09-28-2010 |

### Current Medical Duty Status Assignments

| Assignment | Description | Start |
| --- | --- | --- |
| C19-T NEG | COVID-19 TEST-RESULTS NEGATIVE | 12-08-2020 |
| PAPER | LEGACY PAPER MEDICAL RECORD | 11-07-2018 |
| REG DUTY | NO MEDICAL RESTR--REGULAR DUTY | 04-11-1991 |

### Current Drug Assignments

| Assignment | Description | Start |
| --- | --- | --- |
| DRG I NONE | NO DRUG INTERVIEW REQUIRED | 07-07-1996 |
| ED DECL V | DRUG EDUCATION DECLINE-VOL | 04-26-1994 |

### FRP Payment Plan

| Most Recent Payment Plan |
| --- |

** NO FRP DETAILS **

### FRP Deposits

Trust Fund Deposits - Past 6 months:   $478.40          Payments commensurate ?   Y

New Payment Plan:     ** No data **

### Progress since last review

Inmate Moore has maintained work assignment as a Unit Orderly since March 23, 1994. Inmate Moore completed the following recreation and education courses:

ACE Women in the 21st Century Workplace, ACE AARP Foundation Finances 50+, ACE Money Smart for the Older Population, ACE Healthy Aging Body, ACE Health and Wellness Throughout Your Lifespan, ACE Brain Health As You Age, ACE Talking with Your Doctor, ACE Arthritis Foundation Walk, NUTRITION AND BODY COMP, ACE EARTH SCIENCE FOR RHU'S, RHU OUR SOLAR SYSTEM, RHU MANY FACES OF AMERICAN REV, RHU EXPLORING EUROPE, RHU ACE US CONSTITUTION, MUSCULAR FLEXIBILITY & COMPRE, THE CARDIOVSCULAR AND THE LYMP, RHU ENHANCING YOUR VOCABULARY1, RHU EARLY NORTH AMERICA, RHU HISPANIC AMERICANS, RHU FAMOUS MALE SPORTS STARS, RHU EXPLORING GEOMETRY, RHU EARLY CIVILIZATIONS, RHU ACE GENDER EQUALITY, RHU ANIMAL ANATOMY 14:URINARY, RHU ANIMAL ANATOMY 13:DIGESTN, RHU ANIMAL ANATOMY 12:LYMPHATI, RHU ANIMAL ANATOMY 11:RESPIRAT, RHU AMERICAN-INDIAN WARS, and RHU AFRICAN AMERICAN HISTORY.

Inmate Moore is currently enrolled in Nervous System course. Inmate Moore has maintained clear conduct since June 23, 2004.

### Next Program Review Goals

Maintain enrollment in Nervous System course through January 1, 2022, or until complete. Enroll in ACE Courses RHU FDIC Money Smart 1: Bank On It and RHU FDIC Money Smart 2: Borrowing prior to October 1, 2021, and maintain enrollment through January 1, 2022, or until complete.

### Long Term Goals

Complete Nervous System course, ACE RHU FDIC Money Smart 1: Bank On It and ACE RHU FDIC Money Smart 2: Borrowing prior to July 1, 2022. Enroll in ACE courses RHU FDIC Money Smart 3: Checking and RHU FDIC Money Smart 4: Money Matters prior to July 1, 2022.

### RRC/HC Placement



**Individualized Needs Plan - Program Review   (Inmate Copy)**
Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: MOORE, PAUL 30156-053

SEQUENCE: 00420134
Team Date: 07-22-2021

**Comments**

Finance/Poverty Need Screen Is there documentation in the PSR of any of the following? __ Any history of Bankruptcy __ No bank account __ No assets nor liabilities noted in PSR __ Debts noted in Credit Report or other sources __ Tax Liabilities/back taxes __ Unpaid alimony/child support __ other indications of lack of financial management skills (specify)_____ YES _____ NO ____X____ (if any of the above, check yes) If the answer is yes, the inmate has a financial/poverty skills need.

FTC - Ineligible
Supervision Relocation Required: No
Treaty Transfer: N/A

DATE REVIEWED: _07/13/2021_

INSTITUTION: _USP Allenwood_          UNIT: _3A_

INMATE NAME: _Moore, PAUL_          REG NO: _30156-053_

FIRST STEP ACT (Circle One):          ELIGIBLE    /    (INELIGIBLE)

RECIDIVISM RISK LEVEL (Circle One):          (MINIMUM)  LOW  MEDIUM   HIGH

Exhibit D

## MALE PATTERN RISK SCORING

| Register Number: | 30156-053 | Date: | 7/13/2021 |
| --- | --- | --- | --- |
| Inmate Name: | MOORE, Paul | | |

| MALE RISK ITEM SCORING | CATEGORY | GENERAL SCORE | Enter Score | VIOLENT SCORE | Enter Score |
| --- | --- | --- | --- | --- | --- |
| **1. Current Age** 51-60 Click on gray dropdown box to select, then click on dropdown arrow | > 60 | 0 | 7 | 0 | 4 |
| | 51-60 | 7 | | 4 | |
| | 41-50 | 14 | | 8 | |
| | 30-40 | 21 | | 12 | |
| | 26-29 | 28 | | 16 | |
| | < 26 | 35 | | 20 | |
| **2. Walsh w/Conviction** No | No | 0 | 0 | 0 | 0 |
| | Yes | 1 | | 0 | |
| **3. Violent Offense (PATTERN)** No | No | 0 | 0 | 0 | 0 |
| | Yes | 5 | | 5 | |
| **4. Criminal History Points** 0 - 1 Points | 0 - 1 Points | 0 | 0 | 0 | 0 |
| | 2 - 3 Points | 8 | | 4 | |
| | 4 - 6 Points | 16 | | 8 | |
| | 7 - 9 Points | 24 | | 12 | |
| | 10 - 12 Points | 32 | | 16 | |
| | > 12 Points | 40 | | 20 | |
| **5. History of Escapes** None | None | 0 | 0 | 0 | 0 |
| | > 10 Years Minor | 2 | | 1 | |
| | 5 - 10 Years Minor | 4 | | 2 | |
| | < 5 Years Minor/Any Serious | 6 | | 3 | |
| **6. History of Violence** None | None | 0 | 0 | 0 | 0 |
| | > 10 Years Minor | 1 | | 1 | |
| | > 15 Years Serious | 2 | | 2 | |
| | 5 - 10 Years Minor | 3 | | 3 | |
| | 10 - 15 Years Serious | 4 | | 4 | |
| | < 5 Years Minor | 5 | | 5 | |
| | 5 - 10 Years Serious | 6 | | 6 | |
| | < 5 Years Serious | 7 | | 7 | |
| **7. Education Score** Not Enrolled | Not Enrolled | 0 | 0 | 0 | 0 |
| | Enrolled in GED | -2 | | -1 | |
| | HS Degree / GED | -4 | | -2 | |
| **8. Drug Program Status** No Need | No DAP Completed | 0 | -9 | 0 | -3 |
| | NRDAP Complete | -3 | | -1 | |
| | RDAP Complete | -6 | | -2 | |
| | No Need | -9 | | -3 | |
| **9. All Incident Reports  (120 months)** 0 | 0 | 0 | 0 | 0 | 0 |
| | 1 | 1 | | 1 | |
| | 2 | 2 | | 2 | |
| | > 2 | 3 | | 3 | |
| **10. Serious Incident Reports  (120 months)** 0 | 0 | 0 | 0 | 0 | 0 |
| | 1 | 2 | | 2 | |
| | 2 | 4 | | 4 | |
| | > 2 | 6 | | 6 | |
| **11. Time Since Last Incident Report** 12+ months or no incidents | 12+ months or no incidents | 0 | 0 | 0 | 0 |
| | 7-12 months | 2 | | 1 | |
| | 3-6 months | 4 | | 2 | |
| | <3 | 6 | | 3 | |
| **12. Time Since Last Serious Incident Report** 12+ months or no incidents | 12+ months or no incidents | 0 | 0 | 0 | 0 |
| | 7-12 months | 1 | | 1 | |
| | 3-6 months | 2 | | 2 | |
| | <3 | 3 | | 3 | |
| **13. FRP Refuse** NO | NO | 0 | 0 | 0 | 0 |
| | YES | 1 | | 1 | |
| **14. Programs Completed** > 10 | 0 | 0 | -8 | 0 | -4 |
| | 1 | -2 | | -1 | |
| | 2 - 3 | -4 | | -2 | |
| | 4 - 10 | -6 | | -3 | |
| | > 10 | -8 | | -4 | |
| **15. Work Programs** 0 Programs | 0 Programs | 0 | 0 | 0 | 0 |
| | 1 Program | -1 | | -1 | |
| | >1 Program | -2 | | -2 | |
| **Total Score (Sum of Columns)** | | General: | -10 | Violent: | -3 |
| **General/Violent Risk Levels** | | General: | Minimum | Violent: | Minimum |
| **OVERALL MALE PATTERN RISK LEVEL** | | | Minimum | | |

Paul Moore #30136-063
USP Allenwood
P.O. Box 3000
White Deer, PA 17887

Clerk
United S:
225
Brookl



of Court

tates District Court

Cadman Plaza E.

lyn, NY 11201